UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:11-CR-72 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| JEFFREY ALLEN ROTHWELL | ) | |

## SENTENCING MEMORANDUM

If is often said the most difficult task a federal trial judge must perform is deciding upon and then imposing a sentence in a criminal case. In a universe of difficult decisions, one of the most difficult type of cases, if not the most difficult and also most vexing, confronting federal judges are cases where defendants are charged with receipt and/or possession of child pornography. Defendants facing sentencing for these offenses are generally without any history of criminal conduct, from outward appearances present no threat to society, are middle aged, often with a history of gainful, productive, and socially beneficial employment, and at the time of the discovery of the offense, cooperative with authorities. Even with the aid of modern psychological tools it is quite difficult to predict with any degree of accuracy the likelihood the defendant will repeat the offense of conviction in the future or engage in other criminal acts. Our understanding as a society as to why certain people commit these offenses is also not good. So for these and other reasons, child pornography cases have a very high rate of sentences falling outside of the United States Sentencing Guidelines ("USSG" or "Guidelines").[1] An examination of appellate decisions

---

[1] Child pornography cases have some of the highest percentages of sentences outside of the Guidelines range. Using the number provided by Defendant, sentences are outside of the Guidelines range for the given offense in almost 60% of the cases. That means that only 40 % of sentences are within the Guidelines range. According to the numbers provided by Defendant, during fiscal year 2010, 58% of defendants sentenced under the child receipt/possession Guideline, USSG §

reviewing child pornography sentences yield widely disparate results in the outcome and reasoning that makes it difficult to discern why in one case a particular result is affirmed and in another case with seemingly similar facts the case is reversed.

This case involving Defendant Jeffrey Allen Rothwell ("Defendant" or "Rothwell") illustrates the difficulty a federal judge faces in arriving at an appropriate sentence and the struggle in which the sentencing judge must engage over often compelling conflicting considerations that come into play in child pornography cases. This sentencing is just one of the many thousands that go through the federal judicial system. It is, however, an important event and decision for Mr. Rothwell, and for the administration of justice.

For the reasons explained in this decision, the Court imposed a sentence of 18 months incarceration, ten years of supervised release, and a $100 special assessment.

## I. BACKGROUND

### A. Procedural History

Defendant Jeffrey Allen Rothwell was charged in a Bill of Information filed on August 8, 2011 with knowingly attempting to possess, on or about June 30, 2009, images of child pornography that had been transported in interstate commerce in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Court File No. 1). On September 28, 2011, Defendant appeared before United States Magistrate Judge Susan K. Lee and entered a plea of guilty to the one-count Bill of

---

2G2.2, received sentences below the applicable Guidelines range. The numbers were composed of 1,708 defendants of which 991 received outside of the guideline sentences. However, this number does include distributors of child pornography and not just those who receive and/or possess child pornography (Defendant's Response and Supplemental Sentencing Memorandum, Court File No. 26, p. 9).

Information (Court File No. 11).  The Government filed an amended factual basis in support of

Defendant's guilty plea (Court File No. 7).  This factual basis stated the following:

> On June 30, 2009, the defendant attempted to possess 8 DVD's
> containing images of child pornography as defined in Title 18, United
> State Code, Section 2256(8), which he had ordered by mail. The
> DVDs were delivered as part of an undercover investigation and the
> defendant was not allowed to actually take possession of the DVDs.
> The delivery was made at the defendant's residence in Bledsoe
> County which is in the Eastern District of Tennessee. The defendant
> was interviewed and admitted that he knew the DVDs contained
> images of child pornography and that he intended to possess them.
> The DVDs contained images of child pornography that had been
> transported in interstate and foreign commerce by different means
> including by computer.

Magistrate Judge Lee set sentencing in the case for January 12, 2012 before this Court.

Following the entry of the guilty plea the Court's Probation Office began preparing a Presentence

Investigation Report ("PSR").  The Court approved Magistrate Judge Lee's recommendation that

Defendant's guilty plea be accepted (Court File No. 16).  On December 29, 2011, Defendant filed

a Motion for Downward Departure or in the Alternative a Nonguideline Sentence (Court File No.

18).  The Government filed its Response to Defendant's Motion on January 9, 2012 (Court File No.

19)

On January 12, 2012, the parties appeared before the Court for the sentencing hearing.  At

the hearing the Court raised questions regarding the applicability of *United States v. Bistline*, 665

F. 3d 758 (6th Cir. 2012), a recently published decision of a panel of the United States Court of

Appeals for the Sixth Circuit concerning review of a district judge's sentencing decision in a child

pornography case.[2]  The parties were not familiar with *Bistline* and were not prepared to argue its

---

[2] *Bistline* was decided and filed on January 9, 2012.

applicability. Because from the Court's reading of the PSR and the parties prior submission, the Court foresaw the sentencing decision would be quite difficult and the Court could benefit from counsel's interpretation of *Bistline* and its applicability, the Court continued the sentencing hearing and asked counsel for the government and Rothwell to submit additional briefs providing more facts of Rothwell's case and explaining how *Bistline* and other recent Sixth Circuit decisions might affect the Court's determination of an appropriate sentence for Rothwell. Pursuant to the briefing schedule set by the Court, the government filed its supplemental brief on January 26, 2012 (Court File No. 22),[3] and Rothwell filed a response on February 2, 2012 (Court File No. 26).

With the benefit of the parties' submissions, the Court concluded the sentencing hearing on March 8, 2012.

### B.    Factual Background

Jeffrey Rothwell is a 47-year old single man who lives with his parents, as he always has.[4] Rothwell has never lived separately from his parents or anywhere other than at his family farm (PSR ¶ 27). Rothwell works on the farm, and relies on his parents to oversee his finances and other living matters. In turn, his parents rely on him to provide manual labor on the farm, as well as perform some caretaking (*id.*). Rothwell's 68 year-old father has had open-heart surgery and has recently returned to the doctor a number of times; Rothwell's 66 year-old mother also suffers from health problems (Court File No. 18, p. 4). Thus, Rothwell performs "the vast majority of the farm labor,"

---

[3] The government's supplemental brief did include additional factual material that provided more information regarding the offense.

[4] Drawing from the PSR and the various sentencing memoranda filed by the government and Rothwell, the Court provides brief background facts about Rothwell and his offense. The Court will discuss additional factual considerations when it discusses the 18 U.S.C. § 3553(a) factors below.

and his father indicates he would likely have to close the farm down in Rothwell's absence (*id.* at p. 5).

Rothwell also lives on the family farm because it appears he could not effectively function anywhere else. In an evaluation performed on March 22, 2011, David A. Thompson, M.A., LPE, concluded Rothwell has a full scale Intelligence Quotient ("IQ") of 77, which places Rothwell in the borderline range of functioning (PSR ¶ 28). The evaluation also reported Rothwell has a "very limited degree of social awareness and competence" (*id.*). Although Rothwell graduated from high school,[5] he currently spells at a third-grade level, comprehends sentences at the seventh-grade level, reads at an eighth-grade level, and can perform math at a fourth-grade level (*id.* at ¶ 31). Notes from his elementary school indicated Defendant was cooperative and motivated but "very slow in reading and math skills through out his academic career" (*id.*).

Rothwell suffers from a handful of medical problems. He is a diabetic, and self administers four shots of insulin every day. He has an enlarged liver and has been twice in the last year hospitalized for pancreatitis (*id.* at ¶28). Medical records also indicate Rothwell has been treated for thrombosis and asthma (*id.*); during the sentencing hearing on March 8, 2012, Rothwell appeared to suffer a minor asthma attack. Since improving his diet and responding well to medication, Rothwell's health has improved in recent months.

In 2006, law enforcement authorities raided a commercial movie distribution company in

---

[5] According to a letter sent to the Court by Rothwell's sister, Rothwell struggled to receive Cs, Ds, and Fs in special education classes, but was allowed to graduate from high school because he was widely seen as a good person.

Hollywood, California and seized a number of Digital Video Disks ("DVDs") and other videos.[6]

When interviewed by authorities, David C. Eisenlohr, the owner of the company, claimed he produced "nudist" or naturalist" material, and denied producing any child pornography. These DVDs included an "Oskar" series of films. Although it appears the company had marketed its "Oskar" series to its customers on the premise they were receiving child pornography, a federal court in Virginia subsequently determined the materials did not constitute child pornography.[7] Defendant had ordered the "Oskar" series from Eisenlohr's company in the past (*see* Court File No. 22, ex. 3 (invoice showing orders from Rothwell for approximately 80 films between December 2005 and November 2006)). The record does not indicate how Rothwell first learned of Eisenlohr's company or the "Oskar" series.

Following the raid, federal authorities commenced a sting operation focused on the customers who had ordered the "Oskar" series or similar videos. Federal agents established a fake company called "Little Feet Films" in Fayetteville, North Carolina from which they mailed pamphlets offering "Hardcore Oskar" films. The government has filed the pamphlet as a sealed exhibit in this case, and the Court has reviewed it (Court File No. 22, ex. 1). Based on that review, the Court concludes anyone viewing the pamphlet, including Rothwell, would know child pornography was being offered. The pamphlet contains extremely graphic and explicit descriptions of twenty-four films in which young boys allegedly engage in sexual activities. To most readers of

---

[6] Unless otherwise indicated, the facts surrounding Rothwell's offense are taken from the two memoranda submitted by the government (Court File Nos. 19, 22).

[7] Eisenlohr's indictment in the Western District of Virginia was dismissed after the court determined the "Oskar" series did not constitute child pornography. *See United States v. Eisenlohr*, No. 6:08-cr-34 (W.D. Va. May 19, 2009) (transcript, p. 87) (oral ruling denying government's motion that materials constituted child pornography and dismissing case against Eisenlohr).

the descriptions on the pamphlets the reaction would have been one of revulsion. These films purport to involve "Oskar" and various boys as young as seven but no older than thirteen engaged in sexual activity, often of a deviant nature. In addition to the films, the pamphlet advertises three free "preview reels," proclaiming the reels a "must-have for every lover of boys for their collection!" (*id.*).

Defendant placed an order with "Little Feet Films" for eights DVDs, and also asked to receive the three free "preview reels" (Court File No. 22, ex. 2). Included in Rothwell's order was a United States Postal Service money order for $425.60. On June 30, 2009, federal agents made a controlled delivery to Defendant's residence. The controlled delivery did not contain the actors advertised in the pamphlet, but did include real child pornography. Rothwell's mother accepted the package because Rothwell was not at home when it arrived. Because of religious reasons, Rothwell's mother refused to sign for them.[8] When Rothwell returned home, federal agents confronted Rothwell before he opened the package. He admitted he had ordered the DVDs, and gave the following written statement (all misspellings and errors sic):

> The video's that I ordered said that they was of a young people, I believe that they said that in orded to notice me in ordering them. I thought that they was much order, like other adult movies that I ordered in the past. They told me that they on a piece of catalog that they was and up. I thing that they have not told me the truth I have ordered a number of naturalist videos with kids and adults in them.
>
> I think child porn any one under 18 years old that doing sexual acts. The video that I ordered I believe that was possible child porn, I ordere them because I was just courious, I figered that they was not possible elagle bacause they was threw the mail. I have never had any sexual contact with children what so ever.

---

[8] There is no indication Rothwell's mother had any knowledge of what the package contained.

(Court File No. 22, ex. 4). In a search of Rothwell's room, federal agents found a number of DVDs similar to those at issue in the Eisenlohr prosecution.[9] As noted, these DVDs had been marketed as child pornography and contained images of child erotica[10] that likely appealed to those interested in child pornography. Agents also found adult pornography.

Nothing in the record indicates there was a computer in the home or that Rothwell had access to a computer. Nor is there anything in the record suggesting he used a computer to purchase the DVDs involved in this case.

More than two years after federal agents made the controlled delivery, the government filed the one-count Bill of Information against Rothwell.

## II.    DISCUSSION

### A.    Governing Law

Perhaps the only uncontroversial statement the Court can make about sentencing of federal defendants under the USSG[11] for child pornography is that the issue has been and remains

---

[9] The Court in Eisenlohr observed a number of the videos previously sold and concluded it was "not convinced beyond a reasonable doubt that [the materials at issue in that case were] a lascivious exhibition under the meaning of the law." *Eisenlohr*, No. 6:08-cr-34, transcript, p. 87.

[10] Child erotica can be defined as "any material, relating to children, that serves a sexual purpose for a given individual. It is a broader, more encompassing, and more subjective term than child pornogrpahy." Kenneth V. Lanning, *Child Molesters: A Behavioral Analysis for Professionals Investigating the Sexual Exploitation of Children* 85 (5th ed. 2010). "Child erotica" is not a legally cognizable term, and is not proscribed under federal law.

[11] In their current iteration, the Guidelines contains only one Guideline specifically dedicated to child pornography: USSG § 2G2.2. Before the 2004 amendment to the Guidelines, possession of child pornography was covered under USSG § 2G2.4 and all other child pornography offenses were covered in USSG § 2G2.2. In 2004, the two Guidelines were consolidated into USSG § 2G2.2., and USSG § 2G2.4 was deleted. For a discussion of the rationale and process behind this amendment, see United States Sentencing Commission, *The History of the Child Pornography Guidelines* 41-49 (2009).

controversial. As this Court, *see United States v. McElheney*, 630 F.Supp.2d 886 (E.D. Tenn. 2009) (*McElheney II*)[12], and many other courts have observed, Congressional engagement with child pornography laws over the past two decades has untethered punishment for child pornography from any empirical work done by the United States Sentencing Commission ("Commission") or others, *id.* at 891; *see also* Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric*, 22 Stan. L. & Pol'y Rev. 545, 569-72 (2011) (hereinafter "Hamilton") (discussing absence of empirical evidence in child pornography Guideline). In this circuit, the mere fact Congress decides to take an active role in formulation of a particular Guideline does not provide a principled reason for a court to reject that Guideline. *Bistline*, 665 F.3d at 762 ("[A] district court cannot reasonably reject § 2G2.2–or any other guidelines provision–merely on the ground that Congress exercised, rather than delegated its power to set the policies reflected therein."). The reality, however, that so many courts are imposing sentences of defendants convicted of child pornography offenses outside of USSG § 2.G2.2, coupled with the multiple criticisms of it, *see* Hamilton at 561-74 (surveying criticism of USSG § 2.G2.2), must give any court pause when sentencing a defendant under USSG § 2.G2.2. At the same time, however, the receipt and possession of child pornography, which necessarily requires its production, is unequivocally a

---

[12] This Court was not one of the courts that rejected the child pornography Guidelines nor was it one of the courts that deemed it appropriate to substitute its own judgment as to what would be a more appropriate guideline for child pornography cases. The Court acknowledges it has the authority to reject a particular Guideline including the child pornography Guideline because it disagrees with the Guideline but the Court has never deemed that appropriate. In this case, Defendant Rothwell is not asking the Court to reject the child pornography Guideline. In *McElheney II*, the Court discussed the important function of the Guidelines to both describe what is taking place with respect to sentencings across the country and to predict that a particular sentence will be the typical sentence for a typical defendant who is being sentenced for a typical offense. To the extent a particular Guideline provision loses it descriptive and predictive force, then district courts should accord that Guideline provision less weight in the sentencing decision.

serious and disturbing offense that our law properly punishes. It is the job of our courts generally, and this Court with respect to Mr. Rothwell, to calibrate the proper amount of punishment a given child pornography defendant appropriately receives in light of the specific circumstances of his case. *Cf. Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.")

B. **The Court's Methodology for Sentencing**

Before 2005, the Guidelines mandated how a federal judge sentenced a criminal defendant. After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), rendered the Guidelines advisory, this Court announced the methodology it would typically follow in arriving at a sentencing decision. *United States v. Phelps*, 366 F. Supp. 2d 580 (E.D. Tenn. 2005); *see also United States v. McElheney*, 524 F. Supp. 2d 983, 986-87 (E.D. Tenn. 2007) ("*McElheney I*") (finding *Phelps* in line with Sixth Circuit and Supreme Court precedent). After this Court first announced its methodology in 2005 following *Booker*, the Supreme Court's triad of sentencing decisions in 2007, *Rita v. United States*, 552 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 55 (2007), clarified that a district court must begin its sentencing consideration with the Guidelines. *See, e.g.*, *Gall*, 552 U.S. at 49. Although this requirement to begin with the Guidelines was not settled at the time of the *Phelps* decision, it was consistent with the methodology enunciated in *Phelps*. *See United States v. Swafford*, No. 04-CR-138-1, 2008 WL 5204064 (E.D. Tenn. Dec. 11, 2008) (reaffirming the *Phelps* methodology in light of *Kimbrough*). In *Phelps*, the Court announced a three-step process which remains the method by

which it imposes a sentence on criminal defendants who appear before it.

First, the Court determines the proper advisory Guidelines range. *Gall*, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . .") (citing *Rita*); *see also Bistline*, 665 F.3d at 761 ("Although the Sentencing Guidelines are now only advisory, they still 'should be the starting point and the initial benchmark' for choosing a defendant's sentence.") (quoting *Gall*, 552 U.S. at 49). To make this determination the Court often will have to resolve objections to the PSR's Guidelines calculations as well as any factual or legal disputes related to a defendant's criminal history or offense of conviction. Once the Court has resolved any objections or other disputes, the Court calculates a defendant's advisory Guidelines range using the sentencing table in Chapter A, Part V of the USSG. Performing the Guidelines calculation as the first step permits a reviewing court to "first ensure the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Robinson*, — F.3d —, 2012 WL 603610, at *5 (6th Cir. Feb 27, 2012) (quoting *Gall*, 552 U.S. at 51).

Second, the Court determines whether a departure from the advisory Guidelines range is warranted. This step requires the Court to determine whether, pursuant to the USSG Manual, any departures from the advisory Guidelines range apply. USSG ch. 5, pt. K; *Phelps*, 366 F. Supp. at 586. To assist the Court in determining whether it should grant an upward or downward departure, the Court considers arguments and motions filed by the parties under the Guidelines or the Commission's policy statements. 18 U.S.C. §§ 3553(a)(4) and (5). As the Court observed in *Phelps*, "[d]etermination of departures also allows the Sentencing Commission to better fulfill its role in making recommendations to Congress and in making periodic adjustments to the Guidelines

in light of actual sentences being imposed." *Id.* at 585.   Determination of departures is an essential part of properly calculating the applicable Guidelines range.   Only after a court has correctly departed upward or downward (if it departs at all) from the initial Guidelines range has the court determined the proper advisory Guidelines range for sentencing purposes.   It is often tempting to avoid the difficult departure analysis and go directly to a consideration of the sentencing factors under § 3553 but doing this would short circuit the sentencing process and defeat the laudable goals of honesty in sentencing, transparency, and appellate review.

Once the Court has determined the proper Guidelines range and decided the propriety of any departures, the Court then imposes an appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a).  *Phelps*, 366 F. Supp. at 586.  In sentencing a defendant under these factors, the Court does not presume the Guidelines range is reasonable.  *Gall*, 552 U.S. at 50.[13]  Instead, the Court conducts an "individualized assessment based on the facts presented."  *Id.*  The Court may impose a sentence within the applicable Guidelines range (after any clearly applicable departures) if such is consistent with the court's consideration of the § 3553(a) factors, or impose a non-Guidelines sentence if such is justified by the § 3553(a) factors.  *See United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc).   A non-Guidelines sentence need not be supported by factors that would have justified a departure under the mandatory pre-*Booker* regime.   Departure case law, however, is helpful in determining whether a Guidelines sentence is appropriate and in assisting the Court in determining the appropriate sentence.  *Phelps*, 366 F.Supp.2d at 586.

---

[13] On appellate review, however, the reviewing court may apply a rebuttable presumption of reasonableness to sentences within the Guidelines range; it does not apply a presumption of unreasonableness to sentences outside the Guidelines range. *Gall*, 552 U.S. at 51; *United States v. Griffin,* 530 F.3d 433, 439 (6th Cir.2008) (internal citations omitted).

When sentencing a defendant under this third step, the Court is cognizant of a specific tension in the Supreme Court's sentencing triad that has tripped up appellate courts. *See Robinson*, 2012 WL 603610, at *5 ("It is hardly controversial to say that appellate courts have struggled in applying the principles enunciated in *Rita*, *Gall*, and *Kimbrough*.").[14] On the one hand, the Supreme Court in *Gall* made clear "courts of appeals must review all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. This language suggesting deferential appellate review is consistent with the Sixth Circuit's reading of the Supreme Court's recent sentencing jurisprudence to mean "appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008). On the other hand, however, *Gall* also stands for the oft-quoted proposition that it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50; *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir.2008) (holding that it is not improper to "require some correlation between the extent of a variance and the justification for it"). In part because the Court imposed a relatively substantial variance for Rothwell, it has written this extensive memorandum explaining in detail its rationale for doing so.

The Court's extensive written decision in this case also fulfills another purpose. Although not part of the methodology outlined in *Phelps* and *McElheney*, the Court must explain its

---

[14] *Robinson* continues, noting "[a]ppellate courts have particularly struggled in review of possession of child pornography cases, where variances occur in 60% of cases according to the Sentencing Commission's 2010 Sourcebook of Federal Sentencing Statistics." *Robinson*, 2012 WL 603610, at *5 (citing United States Sentencing Commission, 2010 Sourcebook of Federal Sentencing Statistics, Table 28: Sentences Relative to the Guideline Range By Each Primary Sentencing Guideline; § 2G2.2 (Fiscal Year 2010)).

sentencing decision in sufficient detail to allow adequate appellate review. *Gall*, 552 U.S. at 50 ("After settling on the appropriate sentence, [a district court judge] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). After *Booker*, district judges have much greater discretion with respect to deciding upon appropriate sentences. But that discretion is not unfettered. The court's decision still must be principled, must be reasoned, and must be tethered to Congressional enactments, the Sentencing Guidelines, and the guidance provided by the Supreme Court and the appellate courts. This means it is not appropriate for a sentencing court to select arbitrarily a sentence without regard to Congressional enactments, the Guidelines, and appellate cases.

Finally, in imposing sentence under § 3553(a), the Court keeps in a mind a sentence "is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) ("*Camiscione II*") (quoting *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir.2009)).

### C.     Properly Calculated Guideline Range

With the above in mind, the Court now turns to the first step in its sentencing analysis: calculation of Rothwell's advisory Guidelines. In making decisions about factual matters, the Court relied on the PSR and any additional information provided by the parties. Neither party presented an objection to the PSR at sentencing. To calculate the correct advisory Guidelines range, the Court used the 2011 USSG Manual, which became effective on November 1, 2011.

The first component of the Guidelines calculation is determining Rothwell's offense level. Rothwell pleaded guilty to one count of attempting to possess child pornography in violation of 18

U.S.C. §§ 2252A(a)(5)(B) and (b)(2). The Guideline for violation of Title 18 U.S.C. § 2252A(a)(5)(B) is USSG § 2G2.2(a)(1), and calls for a base offense level of 18. Under USSG § 2G2.2(b)(2), the offense level increased by two points because the material at issue involved a prepubescent minor who had not yet reached age twelve. Under USSG § 2G2.2(b)(7)(d), the offense level is increased by five points because the material at issue contained 600 or more images.[15] Rothwell's resulting offense level is 25.

Because Rothwell entered a guilty plea prior to the commencement of trial and truthfully and fully admitted the conduct comprising the offense of conviction, he received a decrease to his offense level for acceptance of responsibility under USSG § 3E1.1. For clearly demonstrating acceptance of responsibility per USSG § 3E1.1(a), Rothwell received a two-level reduction. Because his offense level prior to the operation of subsection (a) was 16 or greater, he was eligible for an additional one-level reduction under § 3E1.1(b). Subtracting three levels for acceptance of responsibility yields a total offense level of 22.

After calculating Rothwell's offense level, the Court must next determine his criminal history category. He has never had trouble with the law. He has no juvenile adjudications or adult criminal convictions. Therefore, he has no criminal history points, and a criminal history category of I.

With a criminal history category of I and an offense level of 22, Rothwell's advisory Guidelines range is 41-51 months. Although the Court has calculated his Guidelines range, the Court understands it is not bound to sentence Rothwell within this range. Before imposing sentence on Rothwell, the Court will consider the propriety of departures, before analyzing his case in light

---

[15] Under application note 4(B)(ii) of USSG § 2G2.2, the number of images for each video is seventy-five. Defendant here received eleven DVDs. Thus, 75 images x 11 movies = 825 images.

of the factors enumerated in 18 U.S.C. § 3553(a).

### D. Consideration of Departures from Initial Guidelines Range

The second step in the Court's sentencing methodology is to consider whether to depart from the advisory Guidelines range.[16] Here, Rothwell filed a motion seeking a downward departure, or in the alternative, a non-Guidelines sentence (Court File No. 18), which the government opposed (Court File No. 19).

In most cases when the Court considers departures, it looks to see whether the case is outside the "heartland" of the properly calculated Guidelines range. *United States v. O'Georgia*, 569 F.3d 281, 289 (6th Cir. 2009) ("A district court that considers a departure from the Guidelines range must decide whether any features of the case 'take it outside the Guidelines' "heartland" and make it a special, or unusual, case.'") (citations omitted); 2011 USSG Manual, ch. 1, pt. A, intro. comment. 4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case . . . the court may consider whether a departure is warranted."). Following passage of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT Act"), however, the Court's sphere of consideration in a child pornography case is limited. PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003). Congress

---

[16] As alluded to earlier, the sentencing court's decision must be principled. It is tempting to forego the departure analysis and proceed directly to the § 3553(a) analysis. This however works a disservice to the Guidelines system in that it short circuits development of departure law, and thereby distorts Guidelines case law, avoids appellate review of departure decisions, and limits the ability of the Sentencing Commission to take into account sentencing decisions on departures. Properly determined departures, whether upward or downward, are part to the Guidelines system and lead to the properly calculated Guidelines range. Therefore, it is critical that a sentencing court proceed to the departure analysis and determine the applicability of any departures. Following that determination the sentencing court turns to the § 3553(a) analysis.

has determined that departures should only occur in child pornography cases for limited reasons and has directed the Sentencing Commission to include that limitation in the Guidelines.

Accordingly, departures in cases involving sexual offenses and crimes against children are governed by USSG § 5K2.0(b). Under § 5K2.0(b)(1), courts are forbidden to depart downward under the sentencing guidelines unless the basis for the departure "has been affirmatively and specifically identified as a permissible ground of downward departure" in § 5K of the Guidelines. Further, § 5K2.13 expressly forbids courts to depart downward under the Guidelines on the basis of a defendant's diminished capacity if the defendant was convicted of certain offenses, including offenses (such as Rothwell's) under chapter 110 of Title 18 of the United States Code. Although Rothwell asked the Court in his written motion to depart downward under § 5K2.13, his counsel conceded at the sentencing hearing that the Court has no power to so depart under the PROTECT Act.

Rothwell raised several reasons in his motion contending a departure is proper: family responsibilities, mental health, diminished capacity, vulnerability in prison, limited social awareness, and adjustment. With one exception, however, the arguments made in that motion apply more properly to the Court's consideration of the § 3553(a) factors in the third step of the sentencing process. The Court now takes up the one issue properly considered as part of the departure analysis: Rothwell's mental capacity.

A Guidelines policy statement indicates "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." USSG § 5H1.3. Rothwell argues a departure is

17

appropriate on this ground (Court File No. 18, p. 10), and the government agrees (Court File No. 19, p. 2) ("Upon initial contact with the defendant, the agents immediately realized that the defendant had a limited mental capacity. Based upon information provided by the agents, a review of the defendant's mental evaluation and observations made of the defendant, the government agrees that while competent to proceed, his mental limitations [meet the standard in USSG § 5H1.3].").

Although both parties agree a departure under USSG § 5H1.3 is appropriate, neither Rothwell nor the government in their written briefs advocated a specific number of levels the Court ought to depart from his pre-departure advisory Guidelines range of 41-51 months. At the sentencing hearing on March 8, 2012, the Court questioned counsel for both the government and Rothwell regarding an appropriate number of levels to depart. Counsel for Rothwell did not suggest a specific number of levels, indicating the relevant issue was whether or not Rothwell would be sentenced to a period of incarceration. The government indicated a departure of no more than four levels would be adequate.

The Court concluded Rothwell's unusual mental condition presented a ground for departure in this case. Both parties agreed a departure is warranted. Accordingly, pursuant to USSG § 5H1.3, the Court departed downward four levels. This departure resulted in a new advisory Guidelines range of 27 to 33 months. Having determined Rothwell's advisory Guidelines range, the Court now considers whether a sentence within or outside this range is appropriate under the factors in 18 U.S.C. § 3553.

### E. § 3553 Analysis - Statutory Sentencing Factors

Turning next to the final step in the sentencing process the Court determines the appropriate

sentence for Rothwell in light of the factors enumerated in 18 U.S.C. § 3553(a).[17]  The primary

[17] Section 3553(a) provides in determining an appropriate sentence the judge must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for–

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement–

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section

responsibility of the Court in sentencing is to "impose a sentence sufficient, but not greater than necessary, to comply with purposes" stated in § 3553(a)(2). Having given careful consideration to the facts, nature and circumstances of the offense of conviction, the history, background and characteristics of Rothwell, the properly calculated advisory Guidelines range, as well as the other § 3553(a) factors as applied to Rothwell's case, and the guidance provided in recent Sixth Circuit case law on possession of child pornography, the Court concludes the appropriate sentence in this case is 18 months of incarceration, followed by ten years of supervised release. He must also pay a $100 special assessment.

### 1. Rothwell's Requested Sentence

The Court first addresses Rothwell's requested sentence. Rothwell asked the Court to impose a probationary sentence or a sentence carrying a nominal period of incarceration to be followed by a term of supervised release. To reach such a sentence well below the advisory Guidelines range in this case, the Court would have to depart downward much greater than it has or impose a non-Guidelines sentence that avoids a period of incarceration. Rothwell argues there are exceptional circumstances present both in the nature and circumstances of the offense conduct as well as in his personal history and characteristics. In making this argument, Rothwell again raises his borderline mental functioning, his parents' reliance upon him as a farm worker, and his physical

---

994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

health.  Rothwell argues all of these reasons contribute to warrant a sentence of probation in this case.

### 2. The Background, History and Characteristics of Defendant (§ 3553(a)(1))

The Court has already provided considerable detail regarding Rothwell's personal history, circumstances, and characteristics, and sees no need to reiterate them here.  The Court will, however, begin its consideration of § 3553(a)(1) by  noting some aspects of Rothwell's background, history, and characteristics that the Court deems relevant to its sentencing determination.  After making these initial observations, the Court directly considers Rothwell's arguments under this factor.

First, the Court notes Rothwell fits closely the demographic profile of the typical child pornography defendant this Court has seen during its time on the bench.  His age, gender, lack of a criminal record, a long work record, and lack of strong social ties are all common characteristics one sees in many of the defendants convicted of child pornography offenses before this Court.   The Court understands Rothwell's mental limitations may account for some of the lack of a strong social support network.  Also apparent is Rothwell's strong interest in child pornography.  Although the "Oskar" DVDs found in his room were not child pornography, they still demonstrate a strong interest in deviant materials.  The fact Rothwell had ordered these materials in 2005 and 2006–some three years before the offense of conviction in this case–further shows Rothwell has pursued this interest for a considerable period of time.

Rothwell's offense must also be seen in light of his sexual history and background.  As is typical in these cases, Rothwell has a very limited social history including sexual history.  The Court has no explanation as to what motivated him to seek child pornography nor what appetites or desires he may have.  His possession of adult pornography and child erotica indicates he had an interest in

deviant sex for some time. In this and other ways, Rothwell resembles the typical federal child pornography defendant. He is a middle-age male who lives with his parents and does not appear to have had much, if any, sexual experience. *Cf. Camiscione II*, 591 F.3d at 831 (describing Camiscione as a thirty-three year old single male living with his mother with no real friends and who had never dated a woman). That this offense is his first is also not unusual for child pornography defendants.

Rothwell identifies three reasons his history and characteristics warrant a non-Guidelines sentence in this case. First, Rothwell suffers from significant mental incapacity, a characteristic relevant to his culpability (according to Rothwell, *see* Court File No. 18, pp.9-10) or to determining a just punishment (according to the Government, *see* Court File No. 19, p. 2). Second, Rothwell emphasizes the extent to which his aging and elderly parents depend on him to work on the family farm. Third, Rothwell argues he would likely be victimized in a prison setting given his vulnerability. The Court considers these arguments in turn.

There is no question Rothwell's mental capacity is relevant to his sentencing. It is the one fact that makes Rothwell stand out from other child pornography defendants the Court has seen. None of the Sixth Circuit cases the Court reviewed presented a defendant with the type of developmental shortcomings Rothwell experiences.[18] In a different context, the Supreme Court has held "[b]ecause of their disabilities in areas of reasoning, judgment, and control of their impulses . . . [mentally retarded persons] do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." *Atkins v. Virginia*, 536 U.S. 304, 307 (2002) Although

---

[18] In *Camscione*, the defendant was diagnosed with various psychological disorders. *Camiscione II*, 591 F.3d at 826. Such disorders, however, are quite different from the organic mental incapacity at issue in this case.

Rothwell is not mentally retarded, his evaluations indicate he is in the borderline range of intellectual functioning and has "very limited degree of social awareness and competence" (PSR ¶ 28). His abilities in academic subjects place him as low as the third-grade level, and no higher than eighth grade. Letters from his family characterize Rothwell as "backward" or a child in a man's body.

The harder question is how Rothwell's limited intellectual functioning should affect his sentence. The Court has been unable to find any guidance on this question from Sixth Circuit cases. The only two cases the Court found on the sentencing of intellectually disabled individuals for possession of child pornography offenses suggest a non-Guidelines sentence is appropriate. *See United States v. Meillier*, 650 F.Supp.2d 887 (D. Minn 2009); *United States v. Larson*, 558 F.Supp.2d 1103 (D. Mont. 2008), *aff'd in part, vacated in part*, 346 F.App'x. 166 (9th Cir. 2009). *Meillier* presents a case most similar to Rothwell's.[19] Meillier had an IQ of 70, had been a student in special education classes, had the mental age of an eleven year-old,[20] had little or no sexual experience, and was deemed vulnerable because of an inability to take care of himself. *Meillier*, 650 F.Supp.2d at 889-93. Although he faced a Guidelines range of 57-71 months, the district court sentenced him to one day in prison, thirty years supervised release, and 2000 hours of community service. Among other justifications, the district court noted Meillier was "intellectually speaking, an eleven-and-a-half-year-old boy. No court would sentence an eleven-and-a-half-year-old boy to a lengthy term in a federal penitentiary for downloading images of other children engaged in sexual

---

[19] Unlike Rothwell, however, Meillier used a computer to download over 230 images of child pornography. *Meillier*, 650 F.Supp.2d at 888.

[20] According to his grade-level abilities, Rothwell has the cognitive abilities of anywhere from a nine to a fourteen year-old. *See* Court File No. 26, p. 7.

activity." *Id.* at 897.

Perhaps the court in *Meillier* had a better understanding of that defendant's motivations and desires. The Court does not have any understanding of the motivations and sexual desires that caused Mr. Rothwell to be interested in child pornography. In the absence of evidence to the contrary, the Court can only assume that whatever those desires and motivations were from 2005 through 2008, they are still present. The Court also understands that certain desires and motivations are not tempered by our intellectual functioning. Thus, while the Court concludes Rothwell's limited intellectual functioning is relevant to his sentence, the Court simultaneously acknowledges it cannot with any confidence establish or understand the role Rothwell's limitation plays in facilitating, limiting (or having no effect on) his desires and motivations to consume child pornography.

Less compelling is Rothwell's argument that his family circumstances justify a non-Guidelines sentence under § 3553(a)(1). To describe this argument as less compelling is not, however, to dismiss it outright. Certainly the ill-health of Rothwell's elderly parents and their reliance on him to provide for his and their welfare suggests some degree of lenience may be appropriate to account for this dire situation. The relevant Guidelines policy statement, however, generally disfavors consideration of family ties and circumstances as the basis for a departure, and, in cases (such as Rothwell's) involving child pornography, declares such circumstances irrelevant in a district court's consideration of any type of below-Guidelines sentence . USSG § 5H1.6 (noting for certain offenses, "family ties and responsibilities and community ties are not relevant in determining whether a sentence should be below the applicable guideline range"). Moreover, recent Sixth Circuit case law has chastised district courts for placing too much emphasis on family

circumstances in child pornography possession cases.  *Bistline*, 665 F.3d at 767; *United States v. Christman*, 607 F.3d 1110, 1119-20 (6th Cir. 2010);[21] *Camiscione II*, 591 F.3d at 833-34. Accordingly, while the Court is sympathetic to Rothwell's unfortunate family circumstances, the Court does not rely on this factor in selecting an appropriate sentence for him.[22]

Finally, Rothwell's argument about his possible victimization in prison does not persuade the Court.  First, there is a threshold question whether such an argument is appropriately a factor in the Court's consideration of a sentence.  *See Camiscione II*, 591 F.3d at 834-35 ("[T]he district court's concern that Camiscione 'would be vulnerable to what happens to people accused of these kinds of criminal matters in the general population' is an improper sentencing consideration.") (citations omitted); *but see Meillier*, 650 F.Supp.2d at 893-95 (considering possible victimization of Meillier in prison).  Even if the Court could consider possible victimization in prison, Rothwell's bare assertion he is likely to be victimized in prison does not take into account the Bureau of Prisons ("BOP") thoughtful efforts to protect and provide for vulnerable inmates.  Absent some evidence BOP could not ensure Rothwell's safety, the Court does not credit this contention.

Although Rothwell shares characteristics with a number of federal child pornography defendants, the Court ultimately concludes Rothwell's mental condition separates him from other defendants convicted of possessing child pornography.  Thus, in imposing a non-Guidelines

---

[21] The Court does note Rothwell's case for considering family circumstances is stronger than in *Christman* where the defendant made no argument he was the only caretaker for his elderly mother and where there was no concern, as there is in this case, that the family would lose its farm were the defendant imprisoned for a significant period of time.

[22] Moreover, it is difficult for the Court to determine a means of realistically addressing the fact Rothwell's parents rely on him.  Rothwell's availability to his parents would likely  provide only a short term ameliorative and not permanent succor.

sentence in this case, the Court does so in part based on Rothwell's limited intellectual functioning.

### 3. Nature & Circumstances of the Offense (§ 3553(a)(1))

The Court next must consider the nature and circumstances of the offense. The Court has described in considerable detail the facts of this case. Rothwell responded to a pamphlet advertising child pornography sent to him through the mail. He responded to the advertisement by placing an order for eight DVDs containing child pornography. He had to complete the order form, designate the specific DVDs he wanted, obtain a postal money order in the correct amount, complete the money order by hand, place the order and the postal money order in and envelope, and then mail off the order. Having examined the order form Rothwell completed, the Court notes Rothwell spent a considerable amount of time meticulously completing his order for these materials.[23] His decision to purchase the child pornography DVDs was not an impulsive click of a mouse. He may not have thought what he was ordering was illegal, *see* Court File No. 22, ex. 4 (Rothwell written statement), but he certainly was aware he was requesting child pornography, *see id.*

The Court first identifies two particularly troubling aspects of Rothwell's offense. First, because of the effort and thought that went into completing and placing the order here and the payment of money that but for this being a sting would have gone to producers and/or distributors, the Court considers this offense more aggravated than the typical child pornography case the Court sees. Second, the intended effect of Rothwell's offense was to have supported producers of child pornography. The law criminalizes receipt and possession of child pornography distinct from its

---

[23] In addition to completing the order form, Rothwell appears to have written on the form unsolicited notes indicating his interest in receiving additional materials and permitting the company to share his mailing address with other companies.

distribution and production because receipt and possession increases the market for the material and thus encourages the production of child pornography, which in turns results in abuse and harm to children. Here, although Rothwell was involved in a sting and his money was not actually going to producers or distributors, he did not know that and did not intend that the producers and distributors not profit. Indeed, in many of the Court's child pornography cases, the defendant consuming the child pornography, having received it online, did not pay for the material and did not financially reward the distributor or producer. Rothwell's offense, had he not been dealing with a fake company, would have done precisely that.

Other aspects of Rothwell's offense render it less troubling than the typical child pornography case the Court sees. First, the Court notes Rothwell's violation did not involve a computer. Computer use in child pornography cases has become ubiquitous. Rothwell's ordering of child pornography through the mail is a return to the way child pornography was obtained prior to the wide spread ownership and use of computers. Although USSG § 2G2.2 ostensibly takes this aspect of a child pornography offense into account, *see* § 2G2.2(b)(6) (providing two-level increase for use of a computer), Rothwell's mail order child pornography is particularly worthy of attention. *Cf. United States v. Edmiston*, 324 .App'x. 496, 497 (6th Cir. 2009) (Eighty-three year-old defendant convicted of possession of child pornography in connection with mail order sting operation, where images were also found on his computer). Indeed, Rothwell appears to be entirely incapable of using of a computer at all. One of the most troubling aspects of child pornography in our modern world is the extent to which "peer-to-peer" file sharing networks function to quickly and widely transmit images across the nation and the world. The distinction between possession and distribution of child

pornography–a distinction § 2G2.2 recognizes with different base offense levels[24]–begins to break down online, and defendants who plead guilty to possession have often engaged in distribution as well. *See, e.g., Christman*, 607 F.3d at 1112 (charged with four counts of distribution but pleaded guilty only to possession counts). Rothwell's attempted possession of child pornography, although disturbing, did not involve accessing this online market.

Of particular importance in this case is the absence of victims. In the typical child pornography case the Court sees, the defendant's use of child pornography entails the actual production and distribution of child pornography. Such production, in turn, involves victimization, often in brutally disturbing ways, of children. *See, e.g.*, *Bistline*, 665 F.3d at 766 (quoting statement of child victim recounting abuse suffered both at hands of sexual tormentor and in viewing images of her sexual abuse distributed online). Here, by contrast, Rothwell's offense did not involve the production or distribution of child pornography. Although Rothwell would not have known that when he ordered the "Hardcore Oskar" series, the absence of victims distinguishes this case from typical possession of child pornography cases.[25]

It is also worthy of some note that no child pornography was found in Rothwell's room or residence. In none of the other cases surveyed did the Court come across a defendant convicted of possession of child pornography in which a resulting search did not reveal some number of child pornographic images in that defendant's possession. The closest analogue to this case is *Edmiston*, where federal agents making a controlled delivery of DVDs to the defendant arrested him before he

---

[24] USSG § 2G2.2 provides for a base offense level of 18 for possession, and 22 for distribution.

[25] The Court addresses this aspect of Rothwell's offense again below when discussing the seriousness of the offense under § 3553(a)(2)(A).

could take possession of them. *Edmiston*, 324 F.App'x. at 497. Even there, however, Edmiston had purchased online memberships to websites depicting child pornography, and a search of his computer turned up "thirty images involving a pubescent female engaged in lewd and lascivious behavior." *Id.* By contrast, federal authorities in this case found no child pornography in Rothwell's possession. This absence of child pornography in Rothwell's room suggests to the Court this offense was his first successful effort to obtain child pornography. The Court notes, however, the material Defendant has previously purchased was advertised as child pornography and demonstrated an interest in children involved in sexual activities.

It also appears Rothwell's offense did not involve any actual contact with children. This is also typical with defendants convicted of child pornography offenses that have appeared before this Court. To the extent punishment for possession of child pornography serves as a proxy for some judges[26] in punishing past or future child molesters, *see* Hamilton at 579-81 (discussing the correlation between child pornography and child molestation), the Court observes there is nothing on the record to indicate Rothwell engaged in any such molestation. Rothwell indicated in his written statement to federal agents he had never had any sexual contact with children (Court File No. 22, ex. 4), and letters received from his family and friends indicate he has always loved children and treated them well.[27]

---

[26] The Court does not think this is a significant consideration. To the extent a court determines a defendant poses a danger to the public for any reason, including that the defendant may engage in child molestation, that is an appropriate § 3553(a) consideration. But unless there is something in the PSR or presented by the parties, the Court does not see how this could ever play a significant consideration in a court's sentencing decision.

[27] Rothwell's eighteen year-old nephew writes "Jeff Rothwell is my uncle. I have grown up around him all of my life. There has never been a time that I cannot remember visiting with my uncle or him bringing me things from his trips to the store. He has showed me and my family

In light of the mix of factors supporting a more lenient sentence and countervailing considerations suggesting a more stringent sentence, the Court concludes on the whole the specific nature and circumstances of Rothwell's possession militates neither in favor of nor against a non-Guidelines sentence. There are aggravating features and mitigating features to the offense. The Court focused in particular on not only the non-use of a computer by Rothwell in this offense. The Court also notes he had (and at present has) no ability to use a computer to access child pornography. The Court understands, however, this offers scant reassurance with the ubiquitous presence of computers in so many locations and the ease with which they can be used. Also relevant to the Court's consideration was the absence of victims in Rothwell's offense. Moreover, the Court does consider it of importance that no trove or cache of child pornography was found at Rothwell's residence, and unlike with online and computer users of child pornographic, there is no indication Rothwell has possessed child pornography in the past but deleted it. But the Court is concerned by the amount of time and thought that went into Rothwell's offense, and the fact his attempted possession intended to reward producers and distributors of child pornography. Thus, the Court's consideration of the nature and circumstances of Rothwell's offense under § 3553(a)(1) places no thumb on the scale in either direction.

### 4. Retribution - Seriousness of the Offense, Respect for the Law and Just Punishment (§ 3553(a)(2)(A))

Pursuant to § 3553(a), the court is required to impose a sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2)(A). We are taught by *Gall,* 552 U.S. at 49*,* that the district court in reaching an

---

nothing but love and compassion. . . . He has been more than an uncle growing up. He has been like a big brother and a best friend."

appropriate sentencing decision must start with the Guidelines. The Court does that here and first starts with the advisory Guidelines range of 27 to 33 months.[28] The Court then considers whether a sentence within this range is "sufficient, but not greater than necessary, to comply with" this particular purpose of sentencing. If the Court deems this range to be insufficient, then the Court considers whether a sentence above or below that range is sufficient to comply with the goal of retribution.

As the Court noted in *Phelps,* for certain generalized goals or criteria, such as an assessment of what sentences reflect the seriousness of the offense, demonstrate respect for the law, and provide just punishment, the considered judgment of Congress and the Sentencing Commission is entitled to considerable weight because the judgment of Congress and the Sentencing Commission are more accurate assessors of such broad conceptions. *Phelps*, 366 F. Supp.2d at 588-89.[29] Congress has

---

[28] By starting with the Guidelines range, the Court is merely following the requirement established by *Gall*, 552 U.S. at 49, and *Bistline,* 665 F.3d. at 761. Although the Guidelines range is the starting point in the analysis it is not the presumptive finishing point. Using this methodology of beginning with the advisory Guidelines range for each § 3553(a) factor should not result in subtly making the Guidelines mandatory or giving them more than their proper weight in a particular case.

[29] At the sentencing hearing on March 8, 2012, the Court quoted the following passage from *Phelps* and solicited argument from counsel for the government and Rothwell in light of its implications for Rothwell's sentence under § 3553(a)(2)(A):

> The Guidelines and policy statements also reflect the considered judgment of Congress and the Sentencing Commission as to the weight and relevance of certain generalized criteria in criminal sentencing. Not only are these entities more representative than this Court of the various stakeholders in criminal sentencing (including perhaps most significantly the general citizenry), but they are also in a better position to offer judgments as to the presence and extent of certain traditional sentencing considerations with respect to classes of offenses and/or offenders. For example, it would be quite difficult if not a practical impossibility for the Court or the federal judiciary in general to evaluate and assess the need "to afford adequate deterrence to criminal conduct" ( i.e., general deterrence) in the context of any given statutory offense. *See* 18 U.S.C. § 3553(a)(2)(B). It is neither the purpose nor the province of the federal judiciary to gather evidence, hear testimony, and come to

shown through its direct participation in the child pornography Guideline it considers a sentence of incarceration necessary to fulfill this purpose of sentencing. And of course the Commission has provided through § 2G2.2 that the present Guidelines range is what is appropriate to fulfill this purpose of sentence. Moreover, cases from the Supreme Court and practically every circuit have made clear child pornography is a serious offense which a sentence of incarceration reflects. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 307 (2008) ("Child pornography harms and debases the most defenseless of our citizens."); *United States v. Stone*, 575 F.3d 83, 96-97 (1st Cir. 2009); *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007); *United States v. Morace*, 594 F.3d 340, 347 (4th Cir. 2010); *United States v. Perrin*, 478 F.3d 672, 676 (5th Cir. 2007); *Bistline*, 665 F.3d at 766; *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007); *United States v. Garnette*, 474 F.3d 1057, 1061 (8th Cir. 2007); *United States v. Maier*, 646 F.3d 1148, 1156-57 (9th Cir. 2011); *United States v. Irey*, 612 F.3d 1160, 1206-07 (11th Cir. 2010). Because possession of child pornography is a serious offense, it should be met with a serious punishment. *Bistline*, 665 F.3d at 766.

---

conclusions as to such matters, nor is it this Court's desire to do so. Additionally, with respect to § 3553(a)(2)(A)'s call for sentences which reflect the seriousness of the offense, promote respect for the law, and provide just punishment, the conclusions of Congress and the Sentencing Commission are a much more accurate and consistent (though still imperfect) barometer of the present societal consensus as to these broadly phrased objectives of criminal sentencing than the subjective opinions of this Court on any given day could ever hope to be. Finally, because the nation's district courts are presided over by hundreds of judges sitting in different locales and each operating from their own individual professional and personal backgrounds and experiences, the only feasible way to provide any meaningful uniformity in federal sentencing, as called for in § 3553(a)(6), is for this Court and others to give the advisory Guidelines some degree of enhanced weight in determining a fair, just, and reasonable sentence in a given case.

*Phelps*, 366 F. Supp.2d at 588-89.

Although the Court emphasizes the seriousness of child pornography offenses, it also acknowledges a sentence without incarceration can fulfill the purpose embodied in § 3553(a)(2)(A). *See, e.g.*, *United States v. Stall,* 581 F.3d 276 (6th Cir. 2009) (upholding sentence of one day in prison, a lengthy term of supervised release, and substantial fine for possession of child pornography).[30] The Court further understands it is in no way bound to impose a Guidelines sentence. The Court is free to impose a sentence that differs from the Guidelines but is still bound by the principle and requirement that such a sentence not undermine the seriousness of the offense, respect for the law, and the need to ensure a defendant is justly punished for an offense. It is a given that in some cases this purpose can be fulfilled by a sentence that does not involve incarceration. The difficult question is whether in Mr. Rothwell's particular case such purpose is fulfilled.

In considering this question, the Court notes Rothwell's offense differs in one important respect from many child pornography cases: the absence of victims. The primary reason child pornography is particularly serious is because of the harm inflicted on the innocent, child victims. *Bistline*, 665 F.3d at 766. Here, however, there are no identifiable victims. Rothwell placed his order with a fake company, and the DVDs advertised to him did not in fact exist–meaning no children had been victimized in their creation. The absence of these hallmarks renders Rothwell's offense less serious than those of the defendants in *Robinson*, *Bistline*, and *Camiscione*.

Although the absence of victims in this case lessens somewhat the seriousness of Rothwell's offense, the Court ultimately concludes a period of incarceration, albeit less than that called for by Rothwell's advisory Guidelines range, is necessary to comply with § 3553(a)(2)(A). In reaching this

---

[30] The Court discusses *Stall* and the Sixth Circuit's interpretation of this case when it canvasses recent Sixth Circuit case law. *See infra* II.F.

decision, the Court has started with the advisory Guidelines range, as it must, and then considered, given the nature and circumstances of the offense and Rothwell's background and characteristics, whether a sentence within the advisory Guidelines range fulfills this particular purpose of sentencing, or whether such a sentence is greater than necessary to do so.

### 5. Adequate Deterrence (§ 3553(a)(2)(B))

The sentence the Court imposes must also "afford adequate deterrence to criminal conduct." § 3553(a)(2)(B). This purpose of sentencing requires a sentence that will deter others who might be inclined to engage in receiving or possessing of child pornography from doing so. The sentence imposed on Rothwell should be such that the potential child pornography offender will see the sentence Rothwell received and conclude the cost of giving in to his desires or urges is too high, and therefore refrain from doing so.

As discussed previously, *Gall,* 552 U.S. at 49, tells us that the district court in reaching an appropriate sentencing decision must start with the Guidelines. The Court does that here and first starts with the advisory Guidelines range of 27 to 33 months. The Court then considers whether a sentence within this range is "sufficient, but not greater than necessary, to comply with" this particular purpose of sentencing. If the Court deems this range to be insufficient, then the Court considers whether a sentence above or below that range is sufficient to comply with the goal of general deterrence.

As is the case with retribution, consideration of adequate deterrence is a judgment best made by Congress and the Commission. Thus, the Court in *Phelps* indicated it would accord substantial weight to the judgment of Congress and the Commission. *Phelps*, 366 F.Supp.2d at 588. Deciding what punishment is adequate to deter others is a difficult judgment for an individual judge to make.

Congress and the Sentencing Commission have a much broader representative capacity and perspective and are much better placed to make these judgments.

Affording adequate deterrence is also closely linked to reflecting the seriousness of the offense. *Robinson*, 2012 WL 603610 at *9 ("[The defendant's] sentence, which was devoid of any significant period of incarceration, home confinement, or substantial fine, undermines the purpose of general deterrence."). Thus, as the Court observes below in its review of recent Sixth Circuit case law, where a district court fails to impose a sentence that adequately reflects the seriousness of the offense, that court has almost always also failed to afford adequate deterrence to criminal conduct. *Id.*; *Christman*, 607 F.3d at 1121; *Camiscione II*, 591 F.3d at 834. The converse should also hold: where a district court has imposed a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment, such a sentence should almost always also serve as an adequate deterrent.[31] Because the sentence the Court imposes on Rothwell reflects the seriousness of his offense, the sentence also facilitates the purposes of deterrence under § 3553(a)(2)(B).

Finally, although a general practice of leniency in criminal cases would deter criminal conduct less effectively than a general practice of meting out harsh sentences, the Court has written this lengthy decision to emphasize that this case involves extremely unusual facts. *Cf. Meillier*, 650 F.Supp.2d at 898 ("Run-of-the-mill defendants convicted of run-of-the-mill child-pornography offenses can continue to expect to receive substantial prison sentences along the lines of those recommended in the sentencing guidelines."). Again, the Court has started from the advisory

---

[31] The Court recognizes there may be some cases where a sentence sufficiently reflects the seriousness of the offense but does not afford adequate deterrence. This case is not one of those.

Guidelines range, and considered, in light of the need to afford adequate deterrence to criminal conduct, whether a sentence within that range was sufficient, or greater than necessary, to fulfill the purpose of deterrence. In Rothwell's case, the Court concluded a Guidelines sentence was greater than necessary to deter Rothwell and other potential child pornography defendants.

### 6. Incapacitation: Protection of the Public (§ 3553(a)(2)(C))

The sentence the Court imposes must also "protect the public from further crimes of the defendant." § 3553(a)(2)(C). *Phelps* provides that for this purpose the Court is in a better position than Congress or the Commission to make a judgment as to what sentence will best serve the purpose of incapacitating the defendant and protecting the public from future crimes of the defendant. *Phelps*, 366 F. Supp. 2d at 588, n 4 ("[T]here are certain traditional sentencing considerations which the Court is uniquely capable of assessing and weighing in a given case . . . including the need to protect the public from further crimes of a particular defendant . . . ."). This is so because the Court has before it the defendant, has the benefit of specific information on the defendant, and the opportunity to personally observe and hear from the defendant. This stands in contrast to the Court's thinking on the first two purposes of sentencing, where Congress and the Sentencing Commission stand in a better position.

As the Court did in the two previous sections it starts with the advisory Guidelines in reaching a decision on an appropriate sentence. Again it does that here and first starts with the advisory Guidelines range of 27 to 33 months. The Court then considers whether a sentence within this range is "sufficient, but not greater than necessary, to comply with" this particular purpose of sentencing. If the Court deems this range to be insufficient, then the Court considers whether a sentence above or below that range is sufficient to comply with the goal of incapacitation.

The future crime of which we are concerned is that Rothwell will access child pornography in the future. While the Court has not been presented with specific evidence on this point, the Court thinks, because of the nature of the offense, a future violation is still a relevant concern. Of course, the Court is without a crystal ball, and cannot know whether he may violate the law again or pose some risk to society at large. As stated earlier, we do not have any understanding of what motivated Rothwell to order child pornography. One can only surmise there was an interest or desire Rothwell was unable to control. Whatever it was that motivated Rothwell, the Court cannot assume that motivation no longer exists.[32] Also as previously stated, Rothwell fits the profile of defendants convicted of this specific offense in this court.

Experience from previous child pornography cases has shown the urge to access child pornography can be so overwhelming that defendants will engage in very reckless and destructive behavior. For a prime example, the facts in *McElheney* offer sad but clear proof. In *McElheney*, the defendant reoffended while on pretrial release even though, presumably, he understood the likely consequences of such an act. Many of the psychological experts that have offered expert opinions on this subject have opined that these offenders suffer from an addiction.

In these cases the Court also gives considerable weight to the social support system in the defendant's life. A close and supportive support system acts as a reenforcement to assist the offender fight off the desire to access child pornography, provides an outlet for social needs, and acts as a buffer when the defendant encounters stressors that might propel a defendant back to child

---

[32] At the sentencing hearing, counsel for the government and Rothwell indicated Rothwell had not shown any interest in pornography since his offense. While the Court is encouraged to hear this, it cannot rely on these statements alone in deciding whether Rothwell may again seek to access child pornography.

pornography. Such a system can also serve as an early warning system when it becomes apparent the defendant has returned to accessing child pornography. Although Rothwell does have a supportive family, there is no evidence he has the type of strong social support system that would provide the Court comfort. His parents are very supportive but one must observe he was living with them when this offense occurred. Additionally, the record indicates there are no age appropriate friends, organizations, or social groups that play a role in Defendant's life.

Taken together, the Court concludes because there is a legitimate concern Rothwell could reoffend, protection of the public from any further attempts by him to possess child pornography counsels in favor of a nontrivial need to incapacitate Rothwell. The eighteen month term of incarceration combined with the ten years of supervised release suffices to protect the public and guard against future child pornography offenses. The Court first considered whether a sentence within the advisory Guidelines range of 27 to 33 months would be sufficient but no greater than necessary to incapacitate Rothwell and protect the public, and concluded such a sentence would in fact be greater than necessary. Accordingly, the Court imposed a non-Guidelines sentence.

### 7. **Rehabilitation (§ 3553(a)(2)(D))**

The sentence imposed on Rothwell must reflect the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(D).

Starting with the advisory Guidelines range of 27 to 33 months the Court then considers whether a sentence within this range is "sufficient, but not greater than necessary, to comply with" this particular purpose of sentencing. If the Court deems this range to be insufficient, then the Court considers whether a sentence above or below that range is sufficient to comply with the goal of

rehabilitation.

Following a recent decision of the Supreme Court, the Court may not impose a sentence of incarceration solely for the purpose of rehabilitation or treatment. *Tapia v. United States*, 131 S.Ct. 2382, 2392 (2011). Therefore the Court concludes § 3553(a)(2)(D) does not weigh in favor of a prison term. According to Rothwell's evaluation, his poor academic success derives not from a learning disability but from a general deficiency in overall cognitive functioning (*see* Court File No. 18, p. 14 ("Mr. Rothwell's impairments are permanent and irreversible.")). There is little reason to suspect he will benefit from any training or treatment available to him in BOP custody. As a life-long manual laborer on his family farm, the Court does not envision Rothwell would be able to benefit from any vocational training available in prison. Finally, Rothwell's various medical problems have only recently stabilized on account of consistent medical care. Although the Court has faith in the medical care provided by the BOP, it does not think Rothwell's current medical care will be bettered or worsened by a sentence of incarceration.

### 8.    The Need to Avoid Unwarranted Sentencing Disparities (§ 3553(a)(6))

The last factor the Court will consider is the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). The Court first acknowledges the sentence it imposes on Rothwell creates a disparity between him and other defendants facing an advisory Guidelines range of 27-33 months. This different outcome, however, is warranted. The two factors that distinguish Defendant from other defendants convicted of receiving or possessing child pornography is his substantial cognitive limitations and the fact this case does not have any real victims. Thus, the Court's sentence does not create *unwarranted* sentence disparities among defendants with similar records who have been

39

found guilty of similar conduct.

**F.      Recent Sixth Circuit Decisions on Child Pornography**

As the Court observed earlier, a principled decision requires a sentencing judge to consider relevant Supreme Court and appellate decisions.  Therefore, the Court has also looked for guidance from appellate decisions of the Sixth Circuit.  Indeed, in this case, the Court continued Rothwell's initial sentencing hearing to hear from the parties concerning the impact of the Sixth Circuit's recent decision in *Bistline*.  This decision is the most important and instructive.  However, the Court will canvass, in chronological order from oldest to most recent, five published Sixth Circuit opinions[33] reviewing district court sentences of child pornography defendants.  The Court then identifies certain principles from these cases that assist the Court in its consideration of an appropriate sentence for Rothwell.

**1.      *United States v. Stall,* 581 F.3d 276 (6th Cir. 2009)**

In *Stall*, the defendant pleaded guilty to two counts of possession of child pornography and faced a Guidelines range of 57-71 months.  *Stall*, 581 F.3d at 277.  When questioned by the Federal Bureau of Investigation ("FBI"), he confessed to downloading child pornography on his home computer.  He also stated he would never hurt a child.  *Id.* at 278.  Although only eighteen images were found on his hard drive, Stall admitted he had downloaded considerably more in the past.  Noting Stall had no criminal history, had been gainfully employed prior to his arrest, had done well in school, was amenable to treatment, had a strong support network around him, and had shown remorse, the district court sentenced Stall to one day imprisonment, ten years of supervised release,

---

[33] In discussing *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), the Court also briefly examines *United States v. Prisel*, 316 F. App'x. 377 (6th Cir. 2008), because a number of the Sixth Circuit's more recent decisions discuss *Stall* and *Prisel* together.

a $5,000 fine, and a $200 special assessment. *Id.* at 280-81. The government objected, but did not specify the nature of its objection. Thus, the government's primary appellate argument–that the district court had not justified the magnitude of the variance–had to overcome the deferential plain error standard.

It failed to do so. On plain error review, a Sixth Circuit panel, while expressing some concern the district court "could have more readily identified with the defendant because of his privileged background and the fact he attended college, and this comfort with the defendant could have informed its decision not to sentence him to a lengthy term of imprisonment," *id.* at 282, upheld the sentence. While the panel acknowledged it might have been inclined to impose a different sentence under *de novo* review, it concluded the "duration and conditions of Stall's supervised release are sufficiently restrictive that it is difficult to imagine, let alone readily apparent, that other offenders will adopt a cavalier attitude about their possession of child pornography in view of the district court's decision." *Id.* at 286. Over Judge Rogers's dissent, the panel affirmed the decision.[34]

In *United States v. Prisel*, 316 F.App'x. 377 (6th Cir. 2008), a Sixth Circuit panel upheld a similar sentence under similar circumstances. After pleading guilty to one count of possession of child pornography, Prisel faced a Guidelines range of 27-33 months. Although the PSR in Prisel's case had identified as a possible ground of upward departure the fact "his computer and other digital media contained 1,189 images of child pornography, of which 40 are of children cataloged in the National Child Victim Identification Program," *id.* at 379, the district court imposed a sentence of

---

[34] The *Stall* court noted the "posture of this case underscores the possibility that downward variances for possession of child pornography may have less to do with judicial bias and more to do with the failure of prosecutors to defend their sentencing recommendations vigorously." *Stall*, 581 F.3d at 286.

one day imprisonment, followed by three years of supervised release, the first 18 months of which were to be served under home confinement, a $6,000 fine, and a $100 special assessment, *id.* at 380. As in *Stall*, although the government objected to the sentence, it did not articulate its basis for objection.

The Sixth Circuit panel rejected the government's argument the district court had abused its discretion in imposing the sentence it did by failing to consider 1) unwarranted sentencing disparities; 2) the seriousness of the offense; and 3) whether the sentence imposed adequately deterred others. On the first point, the panel noted the government had cited a single case from a different circuit with facts quite distinct from those in *Prisel*. *Id.* at 385-86. On the second and third arguments, the panel concluded the district court had made adequate findings on the record to overcome deferential plain error review. *Id.* at 386-88. The panel affirmed the sentence. *Id.* at 388.

### 2. *United States v. Camiscione*, 591 F.3d 823 (6th Cir. 2010) ("*Camiscione II*")

*Camiscione II* presented a set of facts somewhat similar to *Prisel* but resulted in a significantly different sentencing outcome. Camiscione pleaded guilty to one count of possession of child pornography after an investigation determined he had he used his credit card to purchase memberships to child pornography websites 22 times between May and October 1999. *Camiscione II*, 591 F.3d at 825. A subsequent search of his residence revealed over sixty images of child pornography, including an image of a four-year old child. Camiscione's advisory Guidelines range called for 27-33 months. Initially, the district court, focusing on Camiscione's inability to control his behavior, the likelihood he would not receive adequate medical treatment in prison, and the fact five years had passed since he had viewed child pornography and he had not molested a child during that time, imposed a sentence of custody with the United States Marshals for the remainder of the

day, three years supervised release, and 180 hours of community service. *Id.* at 827. A Sixth Circuit panel vacated this sentence and remanded to the district court to consider how the sentence: 1) deterred Camiscione; 2) protected the public; and 3) avoiding sentencing disparities. *United States v. Camiscione*, 207 F.App'x 631, 637 (6th Cir. 2006) ("*Camiscione I*").

On remand, the district court imposed the same sentence again. On reimposing the same sentence, the district court emphasized the three years of supervised release would be "a pretty rough road to hoe." *Camiscione II*, 591 F.3d at 831. It also characterized Camiscione, a thirty-three epileptic man who lived with his mother, as an atypical sex offender. On the specific issues put to it by the panel in *Camiscione I*, the district court concluded 1) Camiscione would be deterred because the conditions of supervised release would make him unlikely to view child pornography; and 2) Camiscione's sentence avoided unwarranted sentencing disparities because he was "very different from other defendants sentenced to the same or similar crimes" in large part because he had not abused a child or produced child pornography. *Id.* at 833-34.[35] The Sixth Circuit panel found these justifications wanting, and again vacated the sentence and remanded for resentencing.

The panel first criticized the district court for limiting its deterrence analysis entirely to the way the sentence would deter Camiscione, thereby failing to explain how (if at all) the sentence deterred other prospective violators of child pornography laws. Citing the Seventh Circuit, the panel emphasized the importance of general deterrence in the child pornography context:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded. . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a

---

[35] *Camiscione II* does not recount how the district court addressed how its sentence would protect the public, but did not take issue with this aspect of the district court's justification.

statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*Id.* at 834 (quoting *Goldberg*, 491 F.3d at672). In failing to impose a sentence "of any significant period of incarceration, home confinement, or substantial fine," the district court had "undermine[d] the purposes of general deterrence." *Id.*

The panel then faulted the district court for justifying its lenient sentence on the grounds Camiscione had not (so far as it was known) molested a child since his arrest or produced any child pornography himself. In both cases, the panel noted, USSG § 2G2.2 accounts for these aspects of his offense. Moreover, the panel noted the district court's invocation of other aspects of Camiscione's physical and mental condition did not ordinarily warrant a departure, and the district failed to explain why or how Camiscione fell into the extraordinary class of defendants warranting the type of significant variance he received. *Id.* at 834-35. Thus, the panel reversed.

The panel also briefly distinguished Camiscione's case from *Stall* and *Prisel*. First, it noted *Stall* and *Prisel* had been affirmed under "the more stringent plain-error standard of review" intead of the substantive reasonableness standard at issue in *Camiscione II*. The panel placed greater emphasis, however, on the difference in severity of punishment meted out to Stall and Prisel in contrast to Camiscione: "[t]he sentences in *Stall* and *Prisel* included substantial periods of home confinement as part of the defendants' supervised release, as well as significant fines." *Id.* at 835. Focusing on *Stall*, the panel contrasted the ten-year period of supervised release Stall received with the three years imposed on Camiscione. Ultimately, the panel concluded "Camiscione's sentence of a partial day in the custody of the United States Marshal's Service followed by a three-year term of supervised release under a recommended Guidelines range of 27 to 33 months of imprisonment

for possessing 62 images of child pornography does not begin to approach the severity of Stall's sentence."

### 3. *United States v. Christman*, **607 F.3d 1110 (6th Cir. 2010)**

Like *Camiscione II*, the Sixth Circuit in *Christman* vacated a district court's sentence for a child pornography defendant. Christman pleaded guilty to two counts of possession of child pornography, while four counts of distribution were dismissed. *Christman*, 607 F.3d at 1112. Christman faced a 57-71 month advisory Guideline range. Two undercover FBI agents, working independently, had identified Christman as the source of a significant cache of child pornography. *Id.* at 1113. A search ensued, and federal authorities uncovered over 600 images of child pornography; federal agents also concluded Christman "had obtained images from all over the world, including Brazil and England, and had transported these images via computer files to other individuals all over the world." *Id.*

At his resentencing,[36] the district court sentenced Christman to the five days in prison he had already served when he was first arrested, and fifteen years of supervised release. The district court imposed this sentence because Christman "had severe back pain, he was his elderly, ailing mother's primary caregiver, his family believed that he was remorseful, he was a musician and composer, and he had complied with the restrictions of his release on bail." *Id.* at 1112. The government appealed, and a Sixth Circuit panel revacated the sentence and remanded for a second resentencing.

The panel vacated Christman's sentence for three reasons. First, the district court relied on inappropriate factors when imposing its sentence. By selecting a sentence in part because Christman

---

[36] The district court initiated the resentencing when it admitted it had originally sentenced Christman under the mistaken assumption he had abused children. The district court initially sentenced Christman to the bottom of the Guidelines: 57 months.

was a musician and composer and in part because he has the primary caregiver of his elderly and ailing mother, the district court ran afoul of the policy statements in USSG § 5H1.2 (Education and Vocational Skills) and § 5H1.6 (Family Ties and Responsibilities) which instructed courts such factors were ordinarily *not* relevant in determining whether a departure may be warranted. Moreover, the district court had failed to take into account the possibility of Christman's other siblings helping their mother, or of placing the mother in a nursing home.[37]  *Id.* at 1119-20.

Second, the district erred by failing to "provide enough reasoning of the section 3553(a) factors to provide for meaningful appellate review." *Id.* at 1121-22.  Of particular concern was the district court's failure to explain how the sentence served as a deterrent to others and to account for the seriousness of the offense, particularly in light of the harm to the victims.  *Id.* at 1121.  Citing language from *Camiscione II*, the panel criticized the district court's failures in light of a sentence "devoid of any significant period of incarceration, home confinement, or substantial fine undermines the purpose of general deterrence." *Id.* (quoting *Camiscione II*, 591 F.3d at 834).  Finally, the panel faulted the district court for its contradictory sentencing rationales between the first and second sentencing of Christman.  Whereas the original 57-month sentence apparently placed little weight on Christman's back pain and other personal characteristics and properly accounted for the harm of the victims, the second sentence inexplicably changed direction.  The "complete lack of explanation for this change" was substantively unreasonable.  *Id.* at 1123.[38]

---

[37] The *Christman* panel noted cost was no consideration for Christman or the family; rather, they preferred not to place their mother in a nursing home.  *Christman*, 607 F.3d at 1120.

[38] The panel also discussed *Stall* in a footnote: "the facts of *Stall* were far less serious than those here, and the standard of review differed, as *Stall* was evaluated under a plain error standard, and this case must be reviewed under an abuse of discretion standard. Thus, *Stall*'s reasoning and conclusion are not binding here."  *Christman*, 607 F.3d at 1118, n.4.

In *Bistline*, a Sixth Circuit vacated a sentence very similar to that imposed in *Christman*. An investigation led law enforcement agents to Bistline's internet protocol ("IP") address, where 305 images and 56 videos of child pornography were discovered. *Bistline*, 665 F.3d at 760. Bistline pleaded guilty to one count of possession of child pornography. Although Bistline's advisory Guidelines range suggested a sentence of 63-78 months,[39] the district court sentenced him to "a single night's confinement in the courthouse lockup" and ten years supervised release. *Id.* In imposing this sentence, "the keystone of the district court's reasoning was its rejection" of USSG § 2G2.2 as "seriously flawed." *Id.* at 761. The Sixth Circuit panel found fault with that reasoning, concluded the sentence was not substantively reasonable, and vacated.

The district court's policy critique of § 2G2.2 was misguided because it wrongly faulted Congress for properly exercising its legislative authority over sentencing. The panel rejected the district court's view of Congress as meddling inappropriately with § 2G2.2 and interfering with the work of the Commission because "[t]hat is like saying a Senator has encroached upon the authority of her chief of staff, or a federal judge upon that of his law clerk." *Id.* at 762. The panel further observed:

> Congress can marginalize the Commission all it wants: Congress created it. Indeed it is normally a constitutional virtue, rather than vice, that Congress exercises its power directly, rather than hand it off to an unelected commission. The Constitution is fundamentally a democratic document, not a technocratic one.

*Id.* Moreover, nothing in the Constitution "confines the exercise of Congress's sentencing power to empirical grounds alone." *Id.* at 764. Distinguishing the formulation of the child pornography

---

[39] The Probation Officer had recommended a sentence of 24 months for Bistline. *Bistline*, 665 F.3d at 760.

Guidelines from the checkered history of the powder and crack cocaine Guidelines ratio dispute discussed in *Kimbrough*, the panel concluded "when a guideline comes bristling with Congress's own empirical and value judgments—or even just value judgments—the district court that seeks to disagree with the guideline on policy grounds faces a considerably more formidable task than the district court did in *Kimbrough*." *Id.* The district court had not adequately performed this formidable task.

Having rejected the district court's policy disagreement rationale, the panel next explained why the sentence was substantively unreasonable under the § 3553(a) factors. The panel first faulted the district for failing to take account of the seriousness of the offense. The district court's characterization of child pornography possession offenses as tantamount to "a crime of inadvertence, of pop-up screens and viruses that incriminate an innocent person" drastically understated Bistline's culpability. *Id.* at 765. By contrast, the panel emphasized two elements of the possession offense underscoring its seriousness: 1) duration of the offense, *id.* ("Possession of child pornography instead becomes a crime when a defendant knowingly acquires the images—in this case, affirmatively, deliberately, and repeatedly, *hundreds of times over*, *in a period exceeding a year*") (emphasis added); and 2) harm on victims. On this latter point, the panel quoted a long excerpt of a statement from a child pornography victim who had appeared among the images found in Bistline's possession. *See id.* at 766.

The panel more briefly explained why the sentence did not adequately address other § 3553(a) factors either. The district court's conclusion that general deterrence had little, if anything, to do with Bistline's case was without foundation, and ignored the importance of general deterrence in child pornography cases. *Id.* at 767. The district court also appeared to take no steps to avoid

unwarranted sentencing disparities. Finally, the district court focused too much attention on aspects of Bistline's history and characteristics. As in *Christman*, the panel faulted the district court for appearing to rely on Bistline's age, otherwise unblemished record, health, and family circumstances when these factors were all disfavored under the USSG policy statements.[40] *Id.* The panel thus vacated Bistline's sentence.[41]

### 5. *United States v. Robinson*, — F.3d — (6th Cir. Feb. 27, 2012)

After the government and Rothwell had submitted their supplemental briefs in this case, the Sixth Circuit issued another published sentencing decision in a child pornography case. In *Robinson*, a Sixth Circuit panel vacated as substantively unreasonable a less stringent sentence than was at issue in either *Christman* or *Bistline*. Robinson had used his credit card to subscribe to child pornography websites, and Immigration and Customs Enforcement ("ICE") agents came to his home because they suspected him of possessing child pornography. *Robinson*, 2012 WL 603610, at *1. On two computers only used by Robinson (who lived alone), agents found over 7100 images of child pornography. *Id.* He pleaded guilty to one count of possession. Although he faced an advisory Guidelines range of 78-97 months, the district court sentenced him to one day in prison, five years supervised release, and a $100 special assessment.

The Sixth Circuit panel vacated the sentence for three reasons. First, the district court's sentence failed to properly account for the seriousness of Robinson's offense. In language similar

---

[40] The panel also distinguished *Christman* on the ground that while Christman was remorseful for his crimes, Bistline could not understand why it was illegal to possess child pornography; was angry at the government for having taken his downloaded music; and was frustrated that he could no longer possess firearms as a felon. *Bistline*, 665 F.3d at 768.

[41] The *Bistline* court distinguished *Stall* as "more a cautionary tale about prosecutorial neglect, than it is a precedent important to our decision here." *Id.*

to *Bistline*, the panel emphasized the duration of the offense: "Robinson knowingly acquired the images affirmatively, deliberately, and repeatedly, hundreds of times over the course of five years." *Id.* at *8. Second, the panel faulted the district court because it did not consider the deterrent effect of its sentence. Emphasizing how a possession offense creates a market for child pornography, the panel concluded:

> Robinson's sentence, which was devoid of any significant period of incarceration, home confinement, or substantial fine, undermines the purpose of general deterrence. As deterrence has both an individualized and more general component, particularly in the child pornography context, we do not see how Robinson's sentence would meaningfully deter anyone else.

*Id.* at *9. Third, the district court erred because it had not articulated why the sentence avoided unwarranted sentencing disparities. In contrast to the district court's contention Robinson's case was unique in various ways, the panel observed the case was in fact "grimly typical in a number of aspects which enhanced the offense level." *Id.* at *10 (observing Robinson used a computer, images included depictions of prepubescent minors being subjected to rape and sadomasochistic or violent conduct, and offense involved more than 600 images).

Finally, *Robinson* offers the Sixth Circuit's most recent statement on the proper way to view *Stall* and *Prisel* in the context of possession of child pornography sentencing cases. Although the panel briefly noted the plain-error standard under which those cases were reviewed, it spent more time describing how the "sentences imposed in those cases . . . were more severe than Robinson's sentence." *Id.* The panel made the following observation: "Although the courts in *Stall* and *Prisel* rejected the applicable guidelines ranges, they nevertheless sentenced the defendants to lengthy periods of supervised release—periods of which required home confinement—and substantial fines." *Id.* at *11. By contrast, a sentence like Robinson's that included only five years of supervised

release after one day in prison was not substantively reasonable.

### 6. Child Pornography Sentencing Principles

The Court pauses briefly to consider principles articulated by the Sixth Circuit in these cases. These principles guide the Court in its sentencing of Mr. Rothwell. First, a variance on account of a policy disagreement with § 2G2.2 is not properly based on any flaws in that Guideline attributable solely to Congressional involvement. *Bistline*, 665 F.3d at 762. Second, possession of child pornography is a serious offense and must be justly and seriously punished in a way that deters generally. A punishment that both reflects the seriousness of the offense and serves as a general deterrent must include either a significant period of imprisonment, home confinement, or a substantial fine. *Robinson*, 2012 WL 603610, at *9; *Christman*, 607 F.3d at 1121; *Camiscione II*, 591 F.3d at 834. Third, a possession of child pornography offense will be more serious where that offense has lasted over a period of time, *Robinson*, 2012 WL 603610, at *8; *Bistline*, 665 F.3d at 765; *Camiscione II*, 591 F.3d at 825; *Stall*, 581 F.3d at 277, and where the offense has identifiable victims, *Bistline*, 665 F.3d at 766. Fourth, the age, health, and family circumstances of a defendant are generally not enough, standing alone, to justify a departure or a variance. *Bistline*, 665 F.3d at 767; *Christman*, 607 F.3d at 1119-20; *Camiscione II*, 591 F.3d at 833-34. Finally, to avoid unwarranted sentencing disparities, the court must provide more than formulaic recitations that a defendant is atypical, and must explain how a defendant's sentence will not create such disparities. *Camiscione II*, 591 F.3d at 834-35.

In sentencing Rothwell, the Court has looked to these principles for guidance. First, the Court's non-Guidelines sentence evinces no policy disagreement with § 2G2.2, and focuses instead on the § 3553(a) factors as applied to Rothwell's case. Second, in sentencing Rothwell to a

significant period of incarceration as well as a significant period of supervised release, the Court's sentence reflects the seriousness of a child pornography offense and affords adequate deterrence. Moreover, although the Court has imposed a sentence reflecting the seriousness of Rothwell's offense, it has also taken into account the absence of victims in this case, and thus sentenced Rothwell less stringently than it might otherwise have.[42] Third, while the Court departed downward on account of Rothwell's mental condition, it did not do so on account of his age, health, or family circumstances. Finally, the Court has throughout this decision discussed in detail what makes Rothwell and his offense different from other child pornography defendants so as to explain the non-Guidelines sentence the Court imposes in this case. Such a sentence does not create *unwarranted* sentencing disparities.

## III.    CONCLUSION

For all the reasons discussed in considerable detail above, the Court imposed a sentence on Defendant Jeffrey Rothwell to 18 months in prison, ten years of supervised release, and a $100 special assessment. A Judgment Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[42] Although Rothwell's offense may not have involved repeated downloads over a long period of time, the Court is concerned his interest in deviant materials has persisted for a number of years, a fact evidenced by the materials found in his room. Accordingly, the Court did not deem his offense less serious because it did not last over a period of years.